UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNION MUTUAL FIRE INSURANCE COMPANY, | | |
| | Plaintiff, | 22-CV-2025 (JPO) |
| -v- | | OPINION AND ORDER |
| OHR MAKIF LLC, *et al.*, | | |
| | Defendants. | |

J. PAUL OETKEN, District Judge:

Plaintiff Union Mutual Fire Insurance Company ("UMFI"), an insurer, brings this

declaratory judgment action against Defendant OHR Makif LLC ("OHR"), an insured, and

Defendant Ramon Roman ("Roman"), a claimant against OHR seeking to recover against the

UMFI insurance policy.  When this action commenced, Roman had already sued OHR in state

court, alleging premises liability under New York tort law.  So far, UMFI has covered OHR's

losses.  But UMFI itself initiated this suit against OHR, seeking a judicial declaration that,

because OHR made misrepresentations in its applications about matters contractually classified

as "unacceptable risks," those misrepresentations are material.  UMFI moves for summary

judgment under Federal Rule of Civil Procedure 56.  For the reasons that follow, UMFI's motion

is granted.

I.      **Background**

        A.      **Factual Background**

        The following factual background is drawn from the undisputed facts and record

evidence and, where relevant, interpreted in the light most favorable to the non-movants.

### 1.    Insurance Policy

On November 29, 2017, OHR, a single-member LLC wholly owned by Isaac Nazar ("Nazar"), applied for a commercial insurance policy (the "Policy") for premises located at 888 Home Street, Bronx, New York 10459 (the "Premises") from UMFI.  (*See* ECF No. 30 ("Lambert Aff.") ¶¶ 10, 29.)  Using substantially the same application, OHR renewed its coverage again on October 10, 2018.  (*Id.*)  To obtain UMFI coverage in New York, OHR filed its application through a web portal for New Yorkers administered by Roundhill Express LLC ("Roundhill").  Roundhill is a non-party to this action and the claims administrator for New York on behalf of UMFI.  Roundhill is authorized to sell UMFI policies, provided that the transaction terms passed muster under the automated Underwriting Guidelines.

Roundhill issued OHR the Policy it had applied for on November 29, 2017.  Roundhill also approved renewal of the Policy under the same terms, again on the same day OHR applied the second time on October 10, 2018.  (Lambert Aff. ¶¶ 21, 31.)  The applications provided that if certain "unacceptable risks" were on the Premises, UMFI would automatically be entitled to the "issuance of a Notice of Cancellation for Underwriting reasons" as an exercise of its right of recission.  (ECF No. 30-1 ("U.G.") at 1.)  These transactions occurred on a novel "automated web-based underwriting system" that "w[ould] block a policy quote from issuing and w[ould] not continue to the next step of the underwriting process if the application answer[ed] 'yes' to the question about HPD Class C violations."  (Lambert Aff. ¶ 20.)

The Underwriting Guidelines defined "unacceptable risk" to include any time an applicant responded "yes" to "any Preliminary Application Question[] listed on the Roundhill Express Website from time to time."  (U.G. at 2.)  In filling out the applications, OHR twice responded "No" to the following question: "Are there any outstanding HPD Class C violations of fire, safety, health, environmental, building or constructions codes at the proposed location? (Or

similar violations for risk outside of NYC.)"[1]  (Lambert Aff. ¶¶ 21, 24.)  OHR electronically

signed the applications and certified that it had read and understood the provisions thereof and

that all information therein was true.  (Lambert Aff. ¶¶ 25 – 28.)

The Roundhill software is automated and approves issuance of policies based on code

rather than subjective judgment, as long as the applicant attests that no "unacceptable risk" is

present, including answering "no" in response to all Preliminary Application Questions ("PAQs"

or "Question").  If the applicant instead answers "yes" to any PAQ labeled an "unacceptable

risk," then this automated system cannot issue the policy.

The affidavit of James Lambert, president of Roundhill, also establishes that, had there

been a "yes" answer in response to any of Roundhill's PAQs, then Union Mutual, "in fact, could

not have[] issued the Policy."  (Lambert Aff. ¶¶ 54 – 58.)  According to Lambert, Roundhill's

web-based underwriting software would not have issued this Policy if an applicant provided an

affirmative answer to the HPD Class C PAQ.  (Lambert Aff. ¶¶ 20, 56, 58.)  Nor would

Roundhill have issued the same UMFI Policy had OHR not electronically signed both

applications and certified that it had read and understood all provisions therein, and that the

information it submitted was true.  (Lambert Aff. ¶ 25 – 28.)

The Policy's terms bound OHR to accurate disclosure of any untrue information it

supplied, and OHR agreed that on those terms, Roundhill, on behalf of UMFI, would issue

policy number 314PK-5249601-01 to OHR.  (Lambert Aff. ¶ 29; ECF No. 30-3.)  The Policy

conditioned all coverage in the commercial general liability form, providing:

---

[1] "HPD" refers to the New York City Department of Housing Preservation and
Development ("HPD"); Class C refers to a category of administrative regulations promulgated
by that agency named expressly in the "unacceptable risks" provision of the Policy.  (*See* Compl.
¶ 36.)

6. Representations

By accepting this policy, you agree:

> a. The statements in the [Applications] are accurate and complete;
>
> b. Those statements are based upon representations you made to us; and
>
> c. We have issued this policy in reliance upon your representations.

(Lambert Aff. ¶ 32.)

## 2.    Underlying Litigation

On September 11, 2018, Ramon Roman ("Roman"), a Defendant in this action, initiated a lawsuit against OHR in the New York State Supreme Court for Bronx County, seeking compensation for injuries allegedly suffered on premises controlled by OHR during early 2018. *See* Complaint at *1, *Roman v. OHR Makif LLC*, Index No. 3042/2018E (N.Y. Sup. Ct. Sept. 11, 2018). (ECF No. 30-8 ¶¶ 37 – 40.) UMFI assigned the law firm Gold Benes to defend OHR in that action. (Lambert Aff. ¶ 40.) UMFI continues to fund OHR's defense.

Nazar, the sole member of OHR (a limited liability company), was deposed on behalf of OHR on February 6, 2020. Nazar testified that there were outstanding Class C violations on the Premises and he knew of them when OHR applied in 2017. (Lambert Aff. ¶¶ 41 – 42; *see also* ECF No., 30-9.) Nazar said his knowledge was based on public New York City Building Department records, which he saw on the internet.[2] (Lambert Aff. ¶ 43.) By correspondence dated June 9, 2020, UMFI disclaimed coverage by reference to Nazar's statements, returned the

---

[2] In response to Nazar's deposition, UMFI retained investigator First Judicial Claims Service, which produced an investigative report concluding that there were 71 open HPD violations, including four HPD Class C violations. (Lambert Aff. ¶¶ 45 – 48; *see also* ECF No. 30-1; ECF No. 32 ("Verni Aff.")  ¶¶ 5 – 10.)

Policy premium to OHR, and served notice that the insurance contract had been rescinded.  (ECF No. 30-11.)  Roundhill stated that it considered the Policy "void *ab initio*" and would seek a judicial order confirming the contract's recission.  (Pl. Memo. at 15.)

### B.    Procedural History

UMFI initiated this action on February 11, 2022.  (ECF No. 1.)  On April 4, 2022, UMFI filed its First Amended Complaint ("FAC").  (ECF No. 8.)  Since Roman was a claimant against the Policy if he prevailed in *Roman v. OHR Maklif*, the state court action, UMFI joined him as Defendant in this action.  UMFI sought (1) a "declaration that the . . . policies issued to OHR . . . [are] void ab initio pursuant to [New York] Insurance Law § 3105"; (2) a "declaration that Union Mutual has no obligation to defend or indemnify" the underlying litigation; (3) a "declaration that Union Mutual may withdraw from the defense of OHR"; and (4) what "other relief may be just, equitable and proper."  (Pl. Memo. at 7.)  OHR and Roman answered the FAC in April 2022.  This Court referred the case to mediation in the Court-annexed Mediation Program, but on September 2, 2022, the mediation failed.  (ECF Nos. 22, 23.)

On January 30, 2023, following discovery, UMFI moved for summary judgment under Federal Rule of Civil Procedure 56.  (ECF No. 29.)  UMFI argues that, under section 3105 of the New York Insurance Law, no reasonable juror could find in favor of OHR on the issue of the materiality of its misrepresentations, so the Policy is void.

## II.    Legal Standard

Summary judgment under Federal Rule 56 is appropriate when one party fails as a matter of law to adduce evidence from which a reasonable jury could conclude its proof burden satisfied.  Fed. R. Civ. P. 56(a).  A movant need not affirmatively adduce evidence to win at summary judgment; it is sufficient, in some cases, for the movant to point to fatal defects in the other side's ability to satisfy prima facie elements of claims or defenses.  *Id.*  When the movant

does opt to produce an evidentiary record, though, if they satisfy the prima facie elements of

their claim or defense via their production, the burden shifts to the non-movant to show that,

despite that showing, a case still presents a genuine issue of material fact.  Fed. R. Civ. P. 56(c).

Raising such an issue requires "more than simply show[ing] that there is some metaphysical

doubt as to the material facts."  *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002)

(quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  If, after

shifting the burden back to the nonmovant, a court concludes that there remains "no genuine

issue as to any material fact," then the movant is entitled to summary judgment as a matter of

law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**III.    Discussion**

      **A.    UMFI's Initial Summary Judgment Burden**

Under section 3105 of the New York Insurance Law, a policy is subject to recission by

the insurer if, and only if, its issuance was based on material misrepresentations in the

application for coverage.  *See* N.Y. Ins. Law § 3105(a).  A "misrepresentation" is any "false

representation, and the facts misrepresented are those facts which make the representation false."

*Id.*  A misrepresentation is "material," in turn, where the insurer would not have issued the same

policy had it known of the true facts misrepresented.  *Id.* § 3105(b)(1).

New York courts set out two requirements for establishing but-for materiality under

section 3105.  First, it is only necessary that the evidence show that the insurer would not have

issued "this *exact same* policy if it had known of such facts."  *McLaughlin v. Nationwide Mut.*

*Fire Ins. Co.*, 8 A.D.3d 739, 777 (3d Dep't 2004) (emphasis added).  This is satisfied by

showing, for example, that an insurer would have issued an identical policy but would have

charged "a higher premium."  *Christiana Gen. Ins. Corp. of N.Y. v. Great Am. Ins. Co.*, 979 F.2d

268, 278 (2d Cir. 1992) (citing *Merchs. & Shippers' Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 219 A.D. 636, 639 (1st Dep't 1927)).

Second, "[t]o establish materiality as a matter of law, the insurer must present documentation concerning its underwriting practices, such as underwriting manuals, bulletins, or rules pertaining to similar risks, that show that it would not have issued the same policy if the correct information had been disclosed in the application." *2900 Stillwell Ave., LLC v. US Underwriters Ins. Co.*, 172 A.D.3d 1143, 1144 (2d Dep't 2019) (citing *Roudneva v, Bankers Life Ins. Co. of N.Y.*, 35 A.D.3d 580, 580 (2d Dep't 2006); *Garra v. N.Y. Life Ins. Co.*, 276 A.D.2d 469, 469 (2d Dep't 2000); *Shabashev v. N.Y. Life Ins. Co.*, 541 A.D.2d 673, 673 (2d Dep't 1989)).  Such documentary evidence, including affidavits from among an insurer's various agents involved in the underwriting process, establishes an insurer's "prima facie entitlement to judgment as a matter of law" meriting dismissal on summary judgment because the insured has "failed to raise a triable issue of fact in opposition." *2900 Stillwell*, 172 A.D.3d at 1144.

UMFI's evidentiary showing is more than sufficient to carry that burden.  In *2900 Stillwell Ave v. US Underwriters*, decided in 2019, the Second Department held that a single "affidavit of a senior vice president of corporate underwriting and a copy of the underwriting guidelines . . . established that the [insured]'s misrepresentation induced the [insurer] to issue a policy it otherwise would not have issued." *Id.* (internal citations omitted).  Numerous other New York courts and federal courts applying New York law have reached the same conclusion on weaker evidentiary showings than UMFI's, even in the context of functionally indistinguishable UMFI insurance contracts.  *See 866 E. 164th Street, LLC v. Union Mutual Fire Ins. Co.*, 2017 WL 4444334, at *3 (S.D.N.Y. Oct. 3, 2017) (Netburn, M.J.) (recommending granting UMFI summary judgment due to clear unambiguity of same "unacceptable risk" clause

in a carbon copy of the UMFI policy); *Wittner v. IDS Ins. Co. of N.Y.*, 96 A.D.2d 1053, 1054 (2d

Dep't 1983) (holding insurer's submission of "[d]ocumentation, such as the insurance company's

underwriting manuals, rules or bulletins, which pertain to insuring similar risks" would be

sufficient to grant insurer summary judgment); *cf. Cutrone v. Am. Gren. Life Ins. Co. of N.Y.*,

199 A.D.2d 1032, 1033 (4th Dep't 1993) (non-conclusory evidence that insurer would have

rejected application involving similar conditions would be sufficient to establish materiality); *Di

Pippo v. Pruidential Ins. Co. of Am.*, 88 A.D.2d 631, 631 (2d Dep't 1982) (affidavit is

insufficient when it is conclusory and does not adequately describe the underwriting process, and

an affidavit fails to do this when it is two pages long and lacks any verifying exhibits).

UMFI has exceeded the bar set by the *2900 Stillwell* line of cases.  UMFI produced

detailed and unambiguous Underwriting Guidelines (which OHR does not contest); those

Guidelines are substantiated; and Lambert's affidavit explaining the code-based reasons for

materiality offers even stronger evidence of materiality than in other cases, where courts were

not confronted with the automation interface employed by Roundhill.  This uncontradicted

evidence establishes beyond genuine dispute that it would have been impossible to issue OHR

the same policy had it answered "Yes."

### B.   OHR's Resulting Summary Judgment Burden

To survive summary judgment, OHR now must establish that a genuine issue of material

fact persists because the terms at issue are ambiguous.  In New York, "the initial interpretation of

a contract is a matter of law for the court to decide."  *K. Bell & Assocs., Inc. v. Lloyd's

Underwriters*, 97 F.3d 632, 637 (2d Cir. 1996).  "Included in this initial interpretation is the

threshold question of whether the terms of the contract are ambiguous."  *Alexander & Alexander

Servs. v. These Certain Underwriters at Lloyd's, London*, 136 F.3d 82, 86 (2d Cir. 1998).  An

insurance contract is unambiguous "if it 'has a definite and precise meaning, unattended by

danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion.'" *866 E. 164th Street*, 2017 WL 4444334, at *3 (recommending holding terms unambiguous in interpreting the same section of identical UMFI policy based on similar affidavit by Lambert) (quoting *Savers v. Rochester Tel. Corp. Supplement Mgmt. Plan*, 7 F.3d 1091, 1095 (2d Cir. 1993)).  If a contract is unambiguous, judgment as a matter of law is appropriate.  *See Consarc Corp. v. Marine Midland Bank, N.A.*, 966 F.2d 568, 573 (2d Cir. 1993).

As a preliminary matter, it is necessarily the case that none of OHR's responses can succeed unless the phrase "Class C violations" is deemed ambiguous.  Specifically, the crux of OHR's contention is that "Class C violations" is so "undefined and ambiguous" as to not amount to "a 'material misrepresentation.'"  (Opp. at 10.)  If that term is unambiguous in excluding OHR's conduct from coverage, however, then UMFI prevails.

Under the relevant Second Circuit law,

> An ambiguity exists where the terms of an insurance contract could suggest "more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business."

*Morgan Stanley Grp. Inc. v. New England Ins. Co*., 225 F.3d 270, 275 (2d Cir. 2000) (quoting *Lightfoot v. Union Carbide Corp*., 110 F.3d 898, 906 (2d Cir. 1997)).  This forecloses OHR's argument for two reasons.  First, *Morgan Stanley* recognized a requirement that, when an insured party challenges rescission by an insurer, it must actually suggest "more than one meaning" of the relevant term and explain why its conduct reasonably falls within it.  At no point in its papers, affidavits, or exhibits, however, has OHR actually identified — let alone plausibly

alleged — any other interpretation of "UHD Class C Violations."  OHR is left suggesting that the speculative possibility that some other interpretation is enough to force UMFI to trial.

OHR's argument amounts to the claim that the term "outstanding UHD Class C Violations" does not include actually outstanding "UHD Class C Violations."  This is not a reasonable interpretation.  Even if OHR is correct that the "terms of [this] policy" are "ambiguous where applied to one set of facts," that does not "make them ambiguous as to other facts which come directly within the purview of such terms," such as this case.  *Id.* at 276.  Thus, "[a]s a matter of law," the contract unambiguously deems OHR's conduct an "unacceptable risk," and OHR's production "is insufficient to shift the burden [back] to [the] insurer [because] the possible range of meanings does not extend far enough to cover the particular loss."  *Id*. There is no genuine issue of material fact whether these UHD Class C Violations are, under *Morgan Stanley*, "directly within the purview" of the contractual term "outstanding UHD Class C Violation."

Second, *Morgan Stanley* also recognized that, under New York law, whether a term in an insurance contract is ambiguous is judged from the standpoint of the reasonable insured party, including based on familiarity with trade and customary usage in a specialized business or trade, like the commercial real estate industry.  *See id.* at 275.  There is no dispute that "outstanding Class C Violations" is well known in the commercial real estate in New York City and represents a customary usage, referring to violations of Class C as determined by New York City regulators.  This is a sufficient basis for summary judgment.

OHR makes several specific arguments.  First, OHR argues that the Lambert affidavit is inadmissible and, therefore, fails to carry UMFI's burden, because only a formal employee, not an agent, can authenticate documents under the business records exception to the hearsay rule.

*See* Fed. R. Evid. 803(1)(B).  Because Lambert is an employee of Roundhill and not UMFI, OHR contends, his affidavit and deposition testimony cannot authenticate the Underwriting Guidelines.

This argument is without merit.  The same point was raised by the insured party in *866 E. 164th Street*, which involved a similar policy issued by UMFI.  That case concerned the voiding of a UMFI policy based on misrepresentations that concealed similar "unacceptable risks" and, when it prevailed at summary judgment, UMFI's primary evidence was a virtually identical affidavit from Lambert.  2017 WL 4444334 at *3 – 4.  The Court agrees with Judge Netburn's analysis that this objection can be "dispense[d] with quickly" because "James Lambert's affidavit is uncontested, and thus . . . deem[ed] . . . undisputed," and is therefore self-authenticating with respect to his authorized agency relationship, which in turn authorized the affidavit's preparation.  *Id*. at *5.

OHR also argues that reasonable minds could differ as to whether OHR had formed specific intent to defraud UMFI when it made its misrepresentations.  This argument fails because it is contrary to New York law.  *See Rafi v. Rutgers Casualty Ins. Co*., 59 A.D.3d 1057, 1058 (4th Dep't 2009) (holding that the trial court "committed reversible error in charging the jury that the [insurer] was required to prove that the . . . misrepresentation made on . . . the[] insurance application were intentional in order to prevail" (citing *Curanovic v. N.Y. Cent. Mut. Fire Ins. Co*., 307 A.D.2d 435, 436 - 37 (3d Dep't 2003); N.Y. Ins. Law §§ 3105(a) - (b)).

OHR next argues that even if its application answers amount to misrepresentations, they were immaterial ones.  OHR conflates ambiguity and materiality, seemingly arguing (without citation to cases) that because the term was ambiguous, it was also not material: "Lambert identifies no place in the underwriting guidelines where it is stated that properties with Class C

Violations [are] an unacceptable risk." (Opp. at 9.) But this does not logically follow. An important ("material") term may be material *because* it is ambiguous; in other situations, an ambiguous term may be material on one reading but immaterial on another. OHR's arguments about the lack of Policy definitions are fundamentally unpersuasive and, moreover, not doctrinally relevant under section 3105 because "the lack of a definition[] does not, in and of itself, mean that the word must be ambiguous." *Slattery Skanska Inc. v. Am. HomeAssur. Co.*, 67 A.D.3d 1, 9 (1st Dep't 2009).

Under New York law, "parties cannot create ambiguity from whole cloth where none exists" and insurance policy language that is "otherwise plain is not [rendered] ambiguous simply because the parties urge different interpretations in the litigation." *866 E. 164th*, 2017 WL 4444334, at *3 (quoting *Universal Am. Corp. v. Nat'l Union Mutual Fire Ins. Co. of Pittsburgh, PA*, 25 N.Y.3d 675, 680 (N.Y. 2015) (internal quotation marks omitted)). Such is the case here: It is unambiguous that, at least, "outstanding Class C violations" includes outstanding "Class C violations." OHR's proffered interpretation of "outstanding HPD Class C Violations," which would exclude actually outstanding "HPD Class C Violations," is unreasonable. The Policy is therefore void *ab initio*.

### C.    Waiver

Separately, OHR argues that UMFI "waived any right it may have had to rescind [OHR's] insurance policy because the information was a matter of public record and it learned of the purported misrepresentations during [an] inspection of the property more than a year and a half before" this lawsuit. (Opp. at 12.) In other words, OHR contends, even if UMFI wins summary judgment as to liability, there remains a genuine dispute as to whether UMFI waived the remedy.

This argument fails.  It is well established that under section 3105 it is the burden of the insured to make accurate representations on an application for insurance such that "[a]n insurer is *not* required to *verify or investigate* information provided by the insured." *Chi. Ins. Co. v. Kreitzer & Vogelman*, 265 F. Supp. 2d 335, 344 (S.D.N.Y. 2003) (internal citation omitted). OHR fails in this initial showing.  First, OHR "represented that statements made on the application were true and complete to the best of [its] knowledge and belief" because, in the first instance, it "is the duty of the policy holder to examine the policy and to correct any answers that are not correct or complete." *Friedman v. Prudential Life. Ins. Co. of Am.*, 589 F. Supp. 1017, 1023 (S.D.N.Y. 1984) (gathering New York cases).  While true that in some instances an insurer would be deemed having waived recission for not correcting an error in an application, those cases in the New York courts concern the special situation when there is sufficient evidence that the insurer had *actual knowledge* of the truth.  *See Albert J. Schiff Assocs., Inc. v. Flack*, 51 N.Y.2d 692 (1980) (waiver of right to rescind defined as "voluntary and intentional relinquishment of a known right"); *Si Meat Vill., Inc. v. Amguard Ins. Co.*, 208 F. Supp. 3d 490, 492 – 93 (E.D.N.Y 2016) (same).

There is no evidence in the record suggesting actual knowledge on the part of, or actual notice to, UMFI.  The only record evidence that is even arguably relevant to that unaddressed question is consistent with UMFI's account, not OHR's.[3]  It is therefore irrelevant how long UMFI took to initiate the litigation because "New York law is clear that [an insurers' alleged] 'negligence in not making further inquiry' is 'not the equivalent of knowledge'" such that for UMFI to have waived its recission right for the Policy (which would not have been issued but for

---

[3] The Court notes that the undisputed timeline of events shows that UMFI did start taking action to protect its interests under the Policy upon learning of Nazar's admissions, contradicting any inference of strategic wait-and-see gamesmanship by UMFI.

OHR's material misrepresentations) "[s]omething more—something tantamount to notice—is required." *Id.* (quoting *Cherkes v. Postal Life Ins. Co.*, 285 A.D. 514, 515 (1st Dep't 1955). That something is lacking.  There is no allegation, let alone evidence tending to show, that UMFI received the equivalent of notice prior to the deposition.  UMFI acted promptly upon learning of Nazar's testimony to retain investigators and ascertain the truth.  *See supra* note 2 (recounting UMFI's retention of investigator in response to the Nazar deposition).  Based on Lambert's averment, supported by uncontested appended exhibits, it is undisputed that UMFI first learned of the outstanding HPD Class C violations on May 21, 2020.  (Lambert Aff. ¶ 40).  Moreover, UMFI produced twenty pages of internal and external emails, all of which support an inference of corporate knowledge of the Class C violations on that date, none of which OHR has addressed specifically.  (*See* ECF No. 30-10, 1 – 20.)  The Court thus holds, based on the genuinely undisputed facts, that UMFI did not waive its right to rescind in the event of a material misrepresentation by OHR in is applications for the Policy.

IV.    **Conclusion**

For the foregoing reasons, Union Mutual Fire Insurance Co.'s motion for summary judgment is GRANTED.

The Clerk of Court is directed to close the motion at ECF No. 29 and to close this case.

SO ORDERED.

Dated: August 29, 2023
       New York, New York

_____
                        J. PAUL OETKEN
                        United States District Judge

14